**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| In re: ) | |
| ) | |
| KIMBERLY BENSON DANIELS, ) | Case No. 17-14285-BFK |
| MARK JEFFREY DANIELS, ) | Chapter 13 |
| ) | |
| Debtor. ) | |

**MEMORANDUM OPINION AND ORDER OVERRULING
TRUSTEE'S OBJECTIONS TO CONFIRMATION OF
DEBTORS' CHAPTER 13 PLAN**

This matter came before the Court on July 26, 2018, for a hearing on the Chapter 13 Trustee's Objections to the Debtors' Amended Chapter 13 Plan. For the reasons stated below, the Court will overrule the Trustee's Objections.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact:

A.  *The Debtors.*

1.  The Debtors are individuals who formerly resided in Loudoun County, Virginia. They now live in Inwood, West Virginia.

2.  Ms. Daniels has suffered two heart attacks over the past few years. She will need additional medical procedures. She currently takes 13 prescription medications monthly. She is not employed.

3.  Mr. Daniels was unemployed for the period of December 15, 2015, through approximately October 2017. According to his first Schedule I, Mr. Daniels was employed as a Project Manager at Metropolitan Communications Group, Inc. for two months as of the document's December 19, 2017 filing date. Docket No. 1, Schedule I Line 1. His annual salary at

1

his former employment was $75,000.00; it is now $65,000.00 with his current employment at The Lane Construction Corp. His current employer provides health insurance coverage for the family.

4. Other than the proceeds of the sale of their home, discussed below, the Debtors have no cash savings or retirement savings (i.e., no 401K plan). They have used whatever savings they had for Ms. Daniels' medical treatment.

5. The Debtors own two vehicles, a 2004 Chevy Suburban with over 200,000 miles, and a 1998 Ford F-150 pickup truck which also has over 200,000 miles on it. Docket No. 1, Schedule A/B.

*B. This Bankruptcy Case.*

6. At the time they filed their Chapter 13 bankruptcy petition with this Court on December 19, 2017, the Debtors owned a home at 627 Kinvarra Place, Purcellville, VA 20132. Docket No. 1, Schedule A/B. The Debtors listed the home with a value of $500,000.00 and a mortgage in the amount of $370,000.00. Id., Schedule D.

7. There is no dispute that the Debtors owned the property as tenants by the entirety at the time that they filed this case.

8. Initially, the Debtors' Plan called for the payment of roughly $8,000.00 in arrearages on their home over a period of 48 months. Docket No. 7, ¶ 6. The Trustee objected to this Plan on the ground that it was underfunded, and the Court denied confirmation of the Plan. Docket Nos. 15, 17.

9. The Debtors' first Amended Plan also called for the cure of the arrearages on their home, this time in the amount of approximately $9,400.00, over 48 months. Docket No. 19, ¶ 6.

The Trustee objected on a variety of grounds, and the Court again denied confirmation. Docket Nos. 20, 28.

10. In the meantime (that is, between the time that the Debtors filed their Amended Plan and when the Court denied confirmation of the same), the Debtors decided to sell their home. They filed a Motion to Authorize the sale of the property on April 25, 2018. Docket No. 21. The Debtors sought an expedited hearing on their Motion, which the Court granted. Docket Nos. 22, 23.

11. The Trustee filed an Objection to the Debtors' Sale Motion on the ground that he objected "to the concept of a Sale of Real Estate whereby Debtors retain $90,000.00 in cash proceeds while paying 0% to their unsecured creditors." Docket No. 26.

12. Ultimately, the Court approved the sale of the property with the consent of the Trustee. The Debtors were allowed to sell the property, and $15,500.00 was to be paid to the Trustee out of the proceeds of the sale, to be held subject to a further Court Order. This amount, if the Trustee is entitled to the funds, would enable the Trustee to pay the administrative expenses of the bankruptcy estate and the unsecured creditors 100 cents on the dollar. The Debtors reserved their right to claim the proceeds as exempt, tenants by the entireties property. Docket No. 31.

13. The Debtors filed a second Amended Plan on May 21, 2018. Docket No. 33. Under this Plan, the Debtors will pay $100.00 per month for the remaining 31 months of the plan, plus $650.00 already paid to the Trustee for a total of $3,750.00, and the $15,500.00 if the Court rules that the Trustee is entitled to the funds. *Id.* ¶ 2.

14. The Trustee objected on the grounds of good faith, feasibility and disposable income. Docket No. 35. By the time of the hearing, the Trustee abandoned the feasibility objection, but continued to maintain the good faith and disposable income objections.

15. Other than the Wells Fargo claim for the mortgage on the property (which has now been paid in full), the unsecured claims that have been filed in the case are relatively minimal – only four unsecured claims have been filed for a total of $12,648.40. None of the unsecured claims are joint claims, that is claims against both Mr. and Ms. Daniels.

16. The Debtors acknowledge that they will pay the $100.00 per month plan payments out of the proceeds of the sale of the home that they have received (and in fact, if the Debtors' second Amended Plan is confirmed, the Debtors may have the option of paying off the Plan with a lump sum payment).

*C. The Debtors' Schedules I and J.*

17. The Debtors have filed four versions of Schedules I and J in this case – one with the initial Schedules, two attached to the Debtor's Amended Plans and one filed immediately before the hearing on the Trustee's Objections. Docket Nos. 1, 19, 33, 38.

18. The Debtors' income has been reduced from $6,959.33 per month to $6,123.00 per month (which the Trustee does not argue with). *Compare* Docket No. 1, Schedule I Line 2, *with* Docket No. 38, Schedule I Line 2

19. The Debtors have reduced their housing expense from $2,7982.00 per month to $1,400.00 per month. *Compare* Docket No. 1, Schedule J Line 4, *with* Docket No. 38, Schedule J Line 4.

20. They have reduced their anticipated tax refunds from $700.00 per month to $300.00 per month, because they will no longer have deductions for their mortgage interest and

real estate taxes. *Compare* Docket No. 1, Schedule I Line 8h, *with* Docket No. 38, Schedule I Line 8h.

21.  They have increased certain of their expenses (e.g., Food/ Housekeeping has increased from $650.00 to $740.00; medical and dental expenses have increased from $100.00 to $355.00); other expenses have decreased (the home ownership expense, as noted above; life insurance has decreased from $379.00 to 0.00). *Compare* Docket No. 1, Schedule J Line 15a, *with* Docket No. 38, Schedule J Line 15a.

22.  Each of the Debtors' Schedules J came to a different number for their net monthly income - $199.66 (12/19/17), $219.66 (3/20/18), $99.66 (5/21/18), and ($221.00) (7/24/18). Docket Nos. 1, 19, 33, 38, Line 23c.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmations of plans).

The Trustee objects to confirmation of the Debtors' second Amended Plan on two grounds – good faith and disposable income. The Court will address each objection in turn.

**I.  Good Faith.**

Every Chapter 13 case has a requirement of good faith, both in the filing of the case and in confirmation of a proposed plan. 11 U.S.C. §§ 1325(a)(3), (7). *See also Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365 (2007) ("Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor.") Evaluating the Debtors' good faith

requires a review of the totality of the circumstances. *Neufeld v. Freeman,* 794 F.2d 149, 152 (4th Cir. 1986); *Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir. 1982). The factors to be considered include (but are not limited to):

> the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor.

*Id.* The inquiry is to determine whether there has been "an abuse of the provisions, purpose or spirit" of Chapter 13. *Id.* The Debtors bear the burden of proof on the issues of good faith and disposable income. *In re Brandland,* 570 B.R. 203, 212 (Bankr E.D. Va. 2017); *In re Cole*, 548 B.R.132, 141 (Bankr. E.D. Va. 2016); *In re Colston*, 539 B.R. 738, 746 (Bankr. W.D. Va. 2015).

It has long been held in Virginia that tenants by the entireties property is exempt from the process of creditors holding claims against only one of the spouses. *Vasilion v. Vasilion,* 66 S.E.2d 599 (1951) ("where a tenancy by the entirety in the fee simple is once created the property is completely immune from the claims of creditors against either husband or wife alone.") The identifiable proceeds of tenancy by the entireties property are similarly exempt. *Oliver v. Givens*, 129 S.E.2d 661, 663 (1963) ("we hold that in the present case the proceeds of the sale of the [tenants by the entireties] property, which the husband and wife had owned as tenants by the entireties, were likewise owned and held by them as tenants by the entireties. That being so, the husband's interest therein was free of or immune from the claims of his creditors.") The Trustee does not argue the legal point; rather, he asserts that it is fundamentally unfair for the Debtors to retain all of the net proceeds of the sale of their property while paying a minimal distribution to their creditors of only 1% of their claims.

The proposed distribution to the unsecured creditors in this case is indeed meagre – 1% or less. On the other hand, there is no indication that the Debtors have been dishonest in any way

6

in connection with this case. They have not filed for bankruptcy protection before. They are not seeking to discharge debts that would be non-dischargeable in Chapter 7. There are no unpaid domestic support obligations involved. *See In re Mitrano*, 472 B.R. 706, 712 (E.D. Va. 2012) (affirming bankruptcy court's decision to deny debtor's motion to convert to Chapter 13 where debtor's schedules were inaccurate and incomplete, debtor proposed paying only $10 per month to creditors, and debtor was guilty of "egregious efforts to avoid his child support restitution obligation. . . .") The Debtors do not live a lavish lifestyle, and there are no claims in the case for the purchase of luxury items. Their vehicles are aged, and they haven't taken a vacation in years. They have no cash savings (other than the proceeds of the sale of the home) and they have no 401k retirement savings. They spent whatever savings they had on out-of-pocket costs for Ms. Daniels' medical treatment.

The Trustee's fundamental objection is that it is unfair for the Debtors to walk away with $90,000.00 in net sales proceeds, while paying their unsecured creditors virtually nothing. Although the Trustee acknowledges that property held as tenants by the entireties is exempt in Virginia from the claims of individual creditors (i.e., non-joint claims), he argues that the Debtors can pay 100% of the allowed unsecured claims and still walk away with the balance of the proceeds of approximately $75,000.00. This position, however, appears to be a frontal assault on the nature of tenants by the entireties property. The Supreme Court held in *Law v. Seigel* that Section 522(c)'s language ("property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case") means what it says, and that the Chapter 7 Trustee was precluded from surcharging the Debtor's exempt property, even where the Debtor was guilty of egregiously bad conduct in the case. 134 S.Ct. 1188, 1195 (2014). Although

the Trustee seeks to distinguish *Law* on the ground that he is not seeking a surcharge, and *Law* did not address the good faith element in Chapter 13 (as *Marrama* did), the practical effect of the Trustee's position would be the same. Denying confirmation of the Debtors' Amended Plan because the Debtors refuse to contribute property that is inarguably exempt has the same effect as the surcharge in *Law* – and, it should be added, the Debtors are not alleged to have engaged in any of the bad faith conduct that brought the Trustee in *Law* to seek a surcharge.

The Trustee makes two additional arguments in favor of his bad faith objection. First, the Trustee argues that the Debtors' amended Schedules I and J have been a moving target, thereby indicating some manipulation of the numbers. The Debtors testified convincingly, however, that the amendments to Schedules I and J were the result of the changes that have occurred in their lives, especially their move to West Virginia, and the change in Mr. Daniels' employment. Other changes to the Debtors' Schedule J expenses were the product of the Debtors' having conducted a more exacting review of their monthly expenses. For example, the Court views the Debtors' last estimate of their monthly out-of-pocket medical expenses ($355.00) to be reasonable, where Ms. Daniels has ongoing medical issues and has 13 prescriptions per month. Each doctor's visit, each lab test and each prescription almost certainly will have a co-pay. The Court does not find any bad faith in the Debtors' amendments to Schedules I and J.

Second, the Trustee argues that the Debtors are eligible to file a Chapter 7 petition and there is no suggestion that any of the unsecured claims in this case would be non-dischargeable. Counsel for the Debtor was candid about the Debtors' desire not to turn their fate over to a Chapter 7 Trustee, who might encourage creditors with joint claims to file proofs of claim (for example, health care providers who could assert that their claims are joint claims under Virginia's "doctrine of necessities"), or even file joint claims on behalf of the health care

providers under Bankruptcy Rule 3004. There is no guaranty, however, that creditors with potential joint claims would in fact file their claims in Chapter 7, or that the Chapter 7 Trustee would file claims on behalf of such creditors. The proceeds of the sale would be completely exempt in Chapter 7 if no joint claims are filed. It is entirely possible that, were the Debtors' case converted to Chapter 7, they would obtain their discharge, the non-joint creditors would receive nothing and the case would be closed. The Court will not disturb the Debtors' choice of Chapter 13 where there is no other evidence of bad faith.

The Court, therefore, will overrule the Trustee's bad faith objection to confirmation of the Debtors' Amended Plan.

## II. Disposable Income.

The Trustee also objects to the Debtors' Amended Plan on the ground that it fails to meet the disposable income test. 11 U.S.C. 1325(b)(1)(B). The Trustee argues that, because the proceeds of the sale of the home are indisputably tenants by the entireties property, the Debtors should be required to pay for all (or substantially all) of their living expense out of the proceeds during the pendency of their Chapter 13 case, thereby freeing up a good portion of Mr. Daniel's monthly net income for a 100% distribution to the unsecured creditors.

Again, in the Court's view, the effect of the Trustee's argument would amount to a surcharge of the Debtors' exempt property, which is prohibited under Sections 522(c) and (l), and *Law*. Debtors in Chapter 13 are not obligated, for example, to invade their exempt 401k retirement savings to pay for their monthly living expenses for the duration of the case, so that they can free up monthly net income for the benefit of their creditors. Moreover, there is a meaningful difference in Chapter 13 between pre-petition exempt *property* (e.g., tenants by the

entireties property or the debtor's interest in a 401k plan), and post-petition *income* that otherwise might be exempt under non-bankruptcy law.

This Court has held that income that otherwise might be exempt under non-bankruptcy law is included for purposes of calculating the debtor's current monthly income, other than Social Security income which is expressly excepted from the definition of "current monthly income" under Section 101(10A)(A). *In re Matthews*, 2013 WL 1385221, *9 (Bankr. E.D. Va. 2013). This Court held in *Matthews*:

> With respect to the third item, the rental income from the Plain Road Units, the Court accepts the Debtor's assertion that the units are held as tenants by the entirety. The rents, therefore, are the proceeds of exempt property and are exempt from liquidation in Chapter 7. At the same time, however, not listing the net income from these properties on Schedules I and J significantly understates the Debtor's current monthly income. *See* 11 U.S.C. § 101(10A)(A) (" 'current monthly income' means the average monthly income from all sources ") (emphasis added); *Blausey v. U.S. Trustee*, 552 F.3d 1124 (9th Cir. 2009) (current monthly income includes disability insurance benefits even if they are excludable from gross income by the Internal Revenue Code); *Taylor v. United States (In re Taylor),* 212 F.3d 395, 397 (8th Cir. 2000) (affirming dismissal for substantial abuse; "[t]he fact that a pension is exempt from the reach of creditors does not preclude a bankruptcy court from finding that the pension is also disposable income for purposes of Chapter 13"); *In re Andrade*, 2011 WL 1559241, at 2 (Bankr. D. R.I. 2011) ("most courts addressing this issue are saying that exempt property should be included as disposable income"); *In re Briggs,* 440 B.R. 490 (Bankr. N.D. Ohio 2010) (current monthly income includes exempt pension income); *In re Wyatt,* 2008 WL 4572506 (Bankr. E.D. Va. 2008) (current monthly income includes Veterans Administration disability pay); *In re Myles,* 2006 WL 6591834 (Bankr. N.D. Ga. 2006) (projected tax refunds); *In re Tolliver,* 257 B.R. 98 (Bankr. M.D. Fla. 2000) (proceeds of a worker's compensation settlement).

*Id.*

In Virginia, for example, debtors' disposable earnings are 75% exempt from garnishment (only 40% is exempt for support obligations). Va. Code §§ 34-29(a)(1) and (b1)(1). The Court would not allow debtors to use only 25% of their monthly net income as the starting point for their disposable income calculations.

Pre-petition exempt property, on the other hand, once properly exempted, is no longer property of the estate. *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992). The Eleventh Circuit has held that exempt, pre-petition property is not included in the calculation of the debtor's disposable income. *In re Gamble*, 168 F.3d 442 (11th Cir. 1999). A number of other courts have followed *Gamble* and have held that pre-petition exempt property is not included in the debtors' disposable income. *In re Daniels*, 2013 WL 365107 (Bankr. E.D. N.C. 2013); *In re McCollum*, 348 B.R. 377 (Bankr. E.D. La. 2006); *In re Graham*, 258 B.R. 286 (Bankr. M.D. Fla. 2001); *In re Hunton,* 253 B.R. 580 (Bankr. N.D. Ga. 2000). The Court acknowledges that other courts disagree, and in fact, the *Graham* position has been described as the minority view, particularly in the post-BAPCPA environment. *In re Ortiz-Peredo*, 587 B.R. 321 (W.D. Tex. 2018); *In re Luanza*, 337 B.R. 286 (Bankr. N.D. Tex. 2005). However, the majority view tends not to distinguish between exempt property that exists as of the petition date (like personal injury claims) and post-petition income that has not yet been earned as of the petition date. For example, the District Court in *Otiz-Peredo*, which involved the proceeds of a personal injury settlement, relied in part on the Bankruptcy Judge Flatley's decision in *In re Waters*, 384 B.R. 432 (Bankr. N.D. W.Va. 2008), which involved the debtor's VA benefits in the amount of $1,572 per month. Similarly, the decision in *Luanza,* which also involved the settlement of a pre-petition personal injury claim, relied in part on the Eighth Circuit's decision in *In re Koch*, 109 F.3d 1285 (8th Cir. 1997), which involved the debtor's workmen's compensation benefits.

The majority-view line of cases appears usually to involve the settlement of pre-petition personal injury actions, and not 401k accounts or tenants by the entireties property. *See Luanza,* 337 B.R. 286 (personal injury lawsuit); *In re Watters*, 167 B.R. 146 (S.D. Ill. 1994) (personal injury recovery); *In re Morgan*, 352 B.R. 693 (Bankr. E.D. Ark. 2006) (same); *In re Springer*,

338 B.R. 515 (Bankr. N.D. Ga. 2005) (same). The Court does not see the distinction – all three species of property are exempt.[1]

The Fourth Circuit recognized the distinction between pre-petition exempt property and post-petition income in a pre-BAPCPA case, in which it held that the Debtor's exempt IRAs would not be considered as part of his disposable income. *In re Solomon*, 67 F.3d 1128, 1133 (4th Cir. 1995) ("we do not think it a condition of invoking the protections of Chapter 13 that one withdraw pension or retirement income to fund a plan that otherwise meets the § 1325 prerequisites for confirmation. A contrary holding could have devastating results for pension and retirement savings.") In the Court's view, Congress did not intend to change the analysis in BAPCPA. The BAPCPA amendments still have their foundation in income, not pre-petition property. 11 U.S.C. §§ 1325(b), 101(10A).

A distinction between pre-petition exempt property and post-petition earnings respects the Supreme Court's holdings in *Taylor* and in *Law*, and strikes a proper balance between Congress's intent to allow exempt property to remain exempt (Sections 522(c), (l)) and its intent to include all of the debtor's post-petition income in the definition of current monthly income other than Social Security income (Section 101(10A)). Admittedly, there may be cases where the distinction between pre-petition exempt property and post-petition income is not all that clear - *Matthews* is one example, where the post-petition income was being generated from exempt, tenants by the entireties property, but the Court found that the income was included in the debtor's disposable income. Another example might be where the debtor settles a personal injury claim in exchange for an annuity, which is not the case here. This case presents a straightforward

---

[1] To be clear, the Court does not fault the Trustee in this case for not objecting to the Debtors' claim of exemption within 30 days after the meeting of creditors. The property and its proceeds inarguably were exempt when the Debtors filed their case.

instance of pre-petition exempt property and its identifiable proceeds. The Court, therefore, will join in the minority of decisions and hold that the proceeds of pre-petition exempt property are not included in the Debtors' current monthly income.

For these reasons, the Court will overrule the Trustee's disposable income objection to the Debtors' Amended Plan.

**Conclusion**

It is therefore **ORDERED**:

1. The Trustee's Objections to the Debtors' Amended Plan are overruled. The Trustee will submit an Order confirming the Amended Plan.

2. The Clerk will mail copies of this Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Oct 1 2018

/s/ Brian F. Kenney
Brian F. Kenney
United States Bankruptcy Judge

Alexandria, Virginia

Entered on Docket: October 1, 2018

Copies to

Kimberly Benson Daniels
627 Kinvarra Place
Purcellville, VA 20132
*Debtor*

Mark Jeffrey Daniels
627 Kinvarra Place
Purcellville, VA 20132
*Joint Debtor*

Robert Sergio Brandt, Esquire
1513 King Street
Alexandria, VA 22314
*Counsel for Debtors*

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
*Chapter 13 Trustee*

13